*STATE OF NORTH CAROLINA v. RICHARD ALLEN JACKSON*

No. 12A96

(Filed 3 April 1998)

1. **Evidence and Witnesses § 1240 (NCI4th)— inculpatory statements—defendant in custody**

    Defendant was in custody when he stated that he thought he needed a lawyer present and when he made incriminating statements where the evidence showed that, at the request of two deputy sheriffs, defendant accompanied them to the sheriff's office; defendant was in the interrogation room for three hours, during which time he was questioned about a murder, was fingerprinted, and had hair and blood samples taken; defendant told the officers that he was eager to return to work; he was never told that he was free to leave or that he would be given a ride to his home or place of work if he decided to leave; and defendant made the statement about the need for a lawyer after the sheriff asked him what he had done with the rifle he had used to kill the victim, which informed defendant that the sheriff thought he had committed murder. A reasonable man in defendant's position who had been interrogated for approximately three hours and thought the sheriff believed he had committed a murder would not have thought he was free to leave.

2. **Evidence and Witnesses § 1252 (NCI4th)— custodial interrogation—invocation of right to counsel—subsequent inculpatory statements—inadmissibility**

    Defendant invoked his right to counsel during custodial interrogation when he stated, "I think I need a lawyer present," and an officer made a note that at "2:02 P.M. on 12-20-94, wants a lawyer present." Inculpatory statements made to officers after defendant invoked his right to counsel should have been excluded where defendant did not initiate the communication that led to his statements and his attorney was not present.

    Justice ORR did not participate in the consideration or decision of this case.

**STATE v. JACKSON**

[348 N.C. 52 (1998)]

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Downs, J., at the 6 November 1995 Criminal Session of Superior Court, Buncombe County, upon a jury verdict of guilty of first-degree murder. The defendant's motion to bypass the Court of Appeals as to additional judgments for first-degree rape and first-degree kidnapping was allowed 17 July 1997. Heard in the Supreme Court 18 December 1997.

On 31 October 1994, Karen Styles went jogging and did not return. On 25 November 1994, her body was found nude from the waist down and taped to a tree. The defendant became a suspect in the commission of the crime, and on 20 December 1994, members of the Sheriff's Department requested that the defendant come to the sheriff's office with them. At the sheriff's office, the defendant made inculpatory statements. Subsequently, the defendant was charged in Buncombe County with the first-degree murder, first-degree kidnapping, and first-degree rape of Karen Styles.

Prior to the trial, the defendant made a motion to suppress his inculpatory statements. At the hearing on this motion, the testimony revealed the following essentially undisputed facts. Two detectives went to the defendant's place of work at 11:00 a.m. on 20 December 1994 and, after telling him he was not under arrest, requested that he accompany them to the sheriff's office to answer some questions. The defendant agreed and was then driven for a period of ten to twelve minutes from his place of work to the sheriff's office. The defendant was told he was a suspect in the murder of Karen Styles. The defendant denied any implication in the murder.

At the sheriff's office, the defendant was taken to the interview room and warned of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694 (1966). He was again told he was not under arrest. The defendant then consented to a search of his person and to have fingerprints and blood and hair samples taken. The defendant was again told he was not under arrest. The defendant stated he wanted to cooperate and told the officers that he had a chemical imbalance in his brain and that he had been abused as a child.

In response to questioning, the defendant again stated he knew nothing about the murder of Karen Styles and denied owning a gun. The jail nurse came and took fingerprints and blood and hair samples from the defendant. After this, the defendant told the officers of his psychiatric problems—his nervous breakdown, his discharge from

the Navy for mental illness, his attempted suicides, and his depression. After the defendant had been questioned for approximately three hours, the sheriff entered the room at approximately 2:00 p.m. The sheriff asked the defendant, "What did you do with the rifle that Karen Styles was shot with?" A detective present at the time stated that the defendant replied by stating, "I think I need a lawyer present." The detective's handwritten notes, taken during the interview, read, "2:04 P.M. on 12-20-94, wants a lawyer present." The sheriff testified that the defendant said, "I think I might need a lawyer." The trial court found that the defendant stated, "I think I need a lawyer present."

In response to this statement, the sheriff told the defendant he did not want the defendant to answer any more questions, but he wanted to tell him something. The detective testified that the sheriff stated, "Son, I know you bought the rifle and the duct tape at K-Mart on the 28th of October. I know you were in Bent Creek on the day she was killed, and that's fine, but you need help." According to the detective, the defendant then began crying and stated, "But I didn't mean to kill nobody. I didn't." He continued crying, "I'm sorry; I didn't mean to kill her." The detective advised the defendant he needed to calm down, and after he did so, the sheriff and the detective left the defendant in the room and went to call an assistant district attorney for advice as to how to proceed. After speaking with the assistant district attorney, the detective and a captain with the Sheriff's Department returned and readvised the defendant of his *Miranda* rights. The defendant waived those rights and then made a statement admitting he killed Karen Styles.

The court concluded that there were no threats or inducements to make the statements; that the statements were made voluntarily and understandingly; and that the defendant knowingly, intelligently, and voluntarily waived his constitutional rights before making the statements to the officers. The motion to suppress the statement was denied.

The defendant was convicted of first-degree murder, first-degree rape, and first-degree kidnapping. Upon the jury's recommendation, the court imposed the death penalty for the murder conviction. The trial court imposed additional sentences of imprisonment for the rape and kidnapping convictions. The defendant appealed.

**STATE v. JACKSON**

[348 N.C. 52 (1998)]

*Michael F. Easley, Attorney General, by Jill Ledford Cheek, Assistant Attorney General, and Tina A. Krasner, Associate Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, for defendant-appellant.*

WEBB, Justice.

The defendant contends that at the time his inculpatory statements were made, he was in custody and had invoked his right to counsel. He assigns error to the admission into evidence of these statements. This assignment of error has merit.

The State argues that the defendant's statement was properly admitted into evidence at trial because: (1) the defendant was not in custody at the time he stated he thought he needed a lawyer; and (2) even if the defendant was in custody, his statement was not an invocation of his Fifth Amendment right to counsel. We disagree.

If at any time during an interrogation of a person in custody the person invokes his right to counsel, the interrogation must cease, and it cannot be resumed without an attorney being present unless the defendant initiates a further discussion with the officers. *Edwards v. Arizona,* 451 U.S. 477, 68 L. Ed. 2d 378 (1981); *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694. A suspect is in custody when, considering the totality of circumstances, a reasonable person in the suspect's position would not feel free to leave. "This test is necessarily an objective one to be applied on a case-by-case basis considering all the facts and circumstances." *State v. Medlin,* 333 N.C. 280, 291, 426 S.E.2d 402, 407 (1993).

We are faced with two questions. The first question is whether the defendant was in custody at the time he made his incriminating statements. The second question is whether the defendant, during the interrogation, invoked his right to counsel before he incriminated himself.

[1] In determining the custody issue, we first note that the trial court made no finding as to whether the defendant was in custody when he made his statement in regard to needing a lawyer. However, the lack of such a finding does not prevent this Court from evaluating the evidence and deciding whether the defendant was in custody. *State v. Torres,* 330 N.C. 517, 525, 412 S.E.2d 20, 24 (1992).

STATE v. JACKSON

[348 N.C. 52 (1998)]

In this case, we conclude that a reasonable person in the defendant's position when he was confronted by the sheriff would have felt he was in custody and would not have felt free to leave. The evidence showed that, at the request of two deputy sheriffs, the defendant accompanied them to the sheriff's office. While at the sheriff's office, the defendant consented to fingerprinting and gave blood and hair samples. He was under constant supervision. The defendant had told the officers he was anxious to return to work, and despite answering all questions from them and telling them he had no knowledge of the crime, he was never told that he was free to leave or that he would be given a ride to his home or place of work if he decided to leave.

After being in the interrogation room for a period of approximately three hours, during which time he was questioned by the officers in regard to the murder, had hair and blood samples taken, and was fingerprinted, a reasonable man at the least would have wondered whether he was free to leave. When the sheriff asked him what he had done with the rifle he had used to kill the victim, this informed the defendant that the sheriff thought he had committed murder. A reasonable man in the defendant's position who had been interrogated for approximately three hours and thought the sheriff believed he had committed murder would not have thought he was free to leave. He would have thought the sheriff intended to hold him for prosecution for murder. Thus, we hold that the defendant was in custody when he inquired about an attorney.

[2] Having held that the defendant was in custody when he made his statement in regard to counsel, we must now determine whether the defendant articulated his desire for counsel sufficiently that a reasonable officer in the circumstances would have understood the statement to be a request for an attorney. *Davis v. United States*, 512 U.S. 452, 129 L. Ed. 2d 362 (1994). The trial court found, based on sufficient evidence, that the defendant said, "I think I need a lawyer present." The State, relying on *Davis*, says that this statement was ambiguous and that the officers were not required to stop questioning the defendant. In *Davis*, the defendant said, "Maybe I should talk to a lawyer." *Id.* at 455, 129 L. Ed. 2d at 368. The United States Supreme Court held this was not a request for counsel.

*Davis* is not precedent for this case. The use of the word "[m]aybe" by the defendant in *Davis* connotes uncertainty. There was no uncertainty by the defendant. When he said, "I think I need a

lawyer present," he told the officers what he thought. He thought he needed a lawyer. This was not an ambiguous statement. The interrogation should have stopped at that time.

We are reinforced in our decision by the notes of one of the officers which were made during the interrogation. The notes say, "2:04 P.M. on 12-20-94, wants a lawyer present." Although not binding on us, this is an indication of how a reasonable officer conducting an interrogation would have interpreted the defendant's statement.

We have held that the defendant was in custody and had invoked his right to counsel when he made his inculpatory statements. The inculpatory statements made to the detectives should have been excluded because they were made after the defendant invoked his right to counsel. The defendant did not initiate the communication that led to his statements, nor was his attorney present when they were made. Therefore, once the defendant had invoked his right to counsel, no further interrogation could occur.

We cannot hold beyond a reasonable doubt that the admission of this testimony was harmless. N.C.G.S. § 15A-1443(b) (1988). Therefore, for this error, there must be a new trial.

In light of the fact that the defendant will receive a new trial, we do not discuss the defendant's other assignments of error, for the questions they raise may not recur at a new trial. For the reasons stated in this opinion, the defendant must have a new trial.

NEW TRIAL.

Justice ORR did not participate in the consideration or decision of this case.