COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton, Coleman, Willis,
         Elder, Bray, Annunziata, Bumgardner and Lemons
Argued at Richmond, Virginia


DAVID A. McDANIEL
                                             OPINION BY
v.   Record No. 2152-97-1          JUDGE JAMES W. BENTON, JR.
                                          SEPTEMBER 14, 1999
COMMONWEALTH OF VIRGINIA


                    UPON REHEARING EN BANC

           FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                   Christopher W. Hutton, Judge

           James B. Thomas for appellant.

           Ruth M. McKeaney, Assistant Attorney General
           (Mark L. Earley, Attorney General, on brief),
           for appellee.


     Prior to trial, David A. McDaniel filed a motion to suppress statements he made to the police.  The trial judge denied the motion and, after a bench trial, convicted McDaniel of statutory burglary, grand larceny, and receiving stolen property.  On appeal, McDaniel contends the police interrogated him in violation of his Fifth Amendment right to counsel and the trial judge erred in refusing to suppress his statement.  A panel of this Court, with one judge dissenting, reversed the trial judge's refusal to suppress the evidence.  See McDaniel v. Commonwealth, 28 Va. App. 432, 506 S.E.2d 2 (1998).  We stayed the mandate of that decision and granted rehearing en banc.

Upon rehearing en banc, we reverse the convictions and remand for a new trial.

I.

The facts pertinent to the motion to suppress are essentially undisputed.  Detective Rodney Caison of the Hampton City Police Department testified that he arrested David A. McDaniel for burglary and larceny pursuant to arrest warrants. From a preprinted card, the detective read to McDaniel a statement of Miranda rights but did not question McDaniel at that time.  After searching McDaniel's residence, the detective transported McDaniel to an investigative services office. There, the detective began to interrogate McDaniel concerning his involvement in the crimes.

Before responding to the interrogation, McDaniel stated, "I think I would rather have an attorney here to speak for me." The detective testified that he interpreted McDaniel's statement to be a question and told McDaniel that he could not tell him whether he needed an attorney.  Continuing the interrogation, the detective told McDaniel that he should be truthful because two witnesses saw him commit the offenses and because McDaniel's accomplice had confessed to the crimes and implicated McDaniel in the crimes.  The detective testified that McDaniel responded, "[y]ou already know everything," and then confessed to committing the crimes.

McDaniel also testified at the suppression hearing.  He confirmed that he made the request for an attorney as recited by the detective.

The trial judge found that McDaniel's request for an attorney was not a question.  However, reasoning that "[t]he word rather in the middle of his statement indicates some degree of choice," the trial judge ruled that the request for counsel was ambiguous.

II.

To ensure the right against compelled self-incrimination, the Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  More than thirty years ago, the United States Supreme Court addressed "the admissibility of statements obtained from an individual who is subjected to custodial police interrogation and the necessity for procedures which assure that the individual is accorded his [or her] privilege under the Fifth Amendment to the Constitution not to be compelled to incriminate himself [or herself]."  Miranda v. Arizona, 384 U.S. 436, 439 (1966).  The Court "held . . . that . . . [an accused] subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and that the police must explain this right [to the accused] . . . before questioning begins."  Davis v. United States, 512 U.S. 452, 457 (1994) (citing Miranda, 384 U.S. at 469-73).

After the police have advised an accused of the Miranda rights, the accused may make a knowing and intelligent waiver of those rights and respond to the police interrogation. See Edwards v. Arizona, 451 U.S. 477, 483-84 (1981). However, if the accused "express[es] his desire to deal with the police only through counsel, [the accused] is not subject to further interrogation by the authorities until counsel has been made available to him . . . [or] the accused himself initiates further communication, exchanges, or conversations with the police." Id. at 484-85. Recently, the Supreme Court ruled that the test for determining whether the accused invoked the right to counsel is an objective one. See Davis, 512 U.S. at 457-59. The Court must determine whether the accused "articulate[d] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Id. at 459.

Although the detective testified that he "interpreted" McDaniel's response to be a question, and not a request for an attorney, the trial judge rejected that explanation after hearing the detective recite the words and provide his recollection of inflections that McDaniel used. The trial judge stated, "it's not a question -- there's no way it could be a question." We agree with the trial judge's finding. Nothing about the construction of McDaniel's words indicates that McDaniel spoke anything other than a declarative statement.

The trial judge also found, however, that "[t]he word 'rather' in the middle of his statement indicates some degree of choice." Based on that finding, the trial judge ruled that the statement was ambiguous. We disagree. The statement, as ordinarily understood, is unambiguous.

Although the record does not contain the precise language contained on the card from which the detective read to McDaniel the Miranda rights, those rights typically are worded to inform an accused as follows:

MIRANDA WARNING

1. You have the right to remain silent.
2. Anything you say can and will be used against you in court.
3. You have the right to talk to a lawyer and have him present while you are being questioned.
4. If you cannot afford to hire a lawyer, one will be appointed to represent you, without cost, before any questioning, if you desire one.

Harrison v. Commonwealth, 244 Va. 576, 578, 423 S.E.2d 160, 161 (1992). See also Smith v. Commonwealth, 7 Va. App. 310, 312, 373 S.E.2d 340, 341-42 (1988).

McDaniel's response after the detective informed him of the Miranda rights was, "I think I would rather have an attorney here to speak for me." That statement contains no ambiguity. The word "think" is generally defined "to have in one's mind as an intention or desire," Webster's Third New International Dictionary of the English Language 2376 (1986), and the word

"rather," in the context of McDaniel's statement, means "more readily" or "prefer to." Id. at 1885. The statement was an appropriate response to the warnings, which gave McDaniel the choice of speaking with the detective without an attorney or having an attorney present while the detective questioned him. By indicating his preference, McDaniel made his choice clear, informing the detective that he desired to have an attorney speak for him. See State v. Jackson, 497 S.E.2d 409, 412 (N.C. 1998) (ruling that the response "'I think I need a lawyer present,' . . . was not an ambiguous statement"). In requesting an attorney, McDaniel was not required to "'speak with the discrimination of an Oxford don.'" Davis, 512 U.S. at 459.

McDaniel's statement is qualitatively different than statements held to be ambiguous by the United States Supreme Court and the Supreme Court of Virginia. McDaniel did not phrase his response in the form of a question. See Mueller v. Commonwealth, 244 Va. 386, 396-97, 422 S.E.2d 380, 387 (1992) ("Do you think I need an attorney here?"); Eaton v. Commonwealth, 240 Va. 236, 252-54, 397 S.E.2d 385, 395-96 (1990) ("You did say I could have an attorney if I wanted one?"). Furthermore, McDaniel expressed more than a mere "reservation" about continuing the interrogation without counsel. See Davis, 512 U.S. at 462 ("Maybe I should talk to a lawyer."); Midkiff v.

Commonwealth, 250 Va. 262, 267, 462 S.E.2d 112, 115-16 (1995) ("I'm scared to say anything without talking to a lawyer.").[1]

We hold that McDaniel unambiguously responded with sufficient clarity that a reasonable police officer would have understood that McDaniel wanted an attorney. Thus, the interrogation should have ceased. See Edwards, 451 U.S. at 484-85. Because we conclude that the detective gained McDaniel's confession by continuing the interrogation after McDaniel had invoked his Fifth Amendment right to counsel, we reverse the trial judge's denial of the suppression motion. Accordingly, we reverse the convictions and remand this matter to the circuit court for a new trial.

Reversed and remanded.

---

[1] In Davis, the suspect stated during the interrogation, "Maybe I should talk to a lawyer." 512 U.S. at 455. He then continued to talk to the investigator. The Court concluded that the confession did not have to be suppressed because Davis only indicated that he "might want a lawyer." Id. at 462 (emphasis in original). The Court also noted, however, that later, while still being interrogated, Davis said, "I think I want a lawyer before I say anything else." Id. at 455 (emphasis added). The Court observed that the interrogation then ceased immediately. Id. While the issue whether Davis' second statement was ambiguous was not before the Court, the fact that the interrogators ceased questioning Davis indicates that the investigators understood Davis' statement to be a clear request for counsel. We believe that the Court's recitation of the circumstances leading to the cessation of the questioning is significant.

Lemons, J., with whom Bumgardner, J., joins, dissenting.

The trial court found that McDaniel's statement "I think I would rather have an attorney here to speak for me" was not an unequivocal request for counsel. In reversing the conviction the majority substitutes its own findings for that of the trial court.

Detective Caison obtained probable cause for a warrant charging McDaniel with burglary and grand larceny. Having been previously convicted of four misdemeanors and one felony, McDaniel had prior experience with the criminal justice system. Caison went to McDaniel's home and placed him under arrest. At that point, Caison read McDaniel a statement of his Miranda rights, which McDaniel understood. McDaniel wished to continue speaking to Caison but made no statements that "caused [Caison] any concern." Caison then requested McDaniel's permission to search the house, which McDaniel granted. McDaniel's wife escorted Caison to the garage, where Caison observed a "gas-powered Sears pressure washer." McDaniel was then transported to Investigative Services for further interrogation.

McDaniel was not re-read his Miranda rights at the police station; however, he continued "discussing the case" with Caison. Over one hour had elapsed since the reading of his

<u>Miranda</u> rights.[2] "At the beginning of the interview" while "discussing the case," McDaniel stated to the detective, "I think I would rather have an attorney here to speak for me." The detective responded to McDaniel by saying, "I can't tell you if you need an attorney or not" and told McDaniel that he needed to be "truthful to the Court, because the facts are we have two witnesses that were working surveillance and saw you at Sears in the compound" and that the other suspect had "already confessed and implicated" McDaniel. Thereafter McDaniel made incriminating statements concerning the charges.

At the suppression hearing, referring variously to the defendant's "emotion," "demeanor," "body language," and the circumstances of the encounter, the detective stated that, "If you were there and around the atmosphere and everything, he was looking at me for a response." Although the trial court rejected the detective's characterization of McDaniel's statement as a question, the trial court compared the statement to others considered by the Supreme Court of Virginia and the United States Supreme Court and found that, "[t]here is an equivalent amount of equivocation, ambiguity, in the statement as spoken by this defendant, as there has been in those other cases where other language was cited." Whether McDaniel's

---

[2] McDaniel was arrested and read his <u>Miranda</u> rights at 4:45 p.m. He gave a written statement at 6:23 p.m. after a thirty-minute interview.

statement was a question is not the issue in this case.  The

trial judge focused upon the issue in this case:  whether

McDaniel's statement, under the circumstances and in context,

was equivocal.

McDaniel does not contend that his incriminating statements

were involuntary.  Rather, he argues that the rule articulated

in Edwards v. Arizona, 451 U.S. 477 (1981), required cessation

of interrogation after an unequivocal invocation of the right to

counsel.

Under Edwards, law enforcement officers must immediately

cease questioning a suspect who has clearly asserted his right

to have counsel present during custodial interrogation.  See id.

Following Edwards, many courts addressed what it means to

"clearly assert" the right to have counsel present.  The United

States Supreme Court revisited this issue in Davis v. United

States, 512 U.S. 452, 455 (1994), where the defendant had been

read his Miranda rights, waived his right to remain silent, and

after one and one-half hours of interrogation stated, "Maybe I

should talk to a lawyer."  In finding that Davis' statement was

equivocal, the Court stated:

> The applicability of the rigid
> prophylactic rule of Edwards requires courts
> to determine whether the accused actually
> invoked his right to counsel.  To avoid
> difficulties of proof and to provide
> guidance to officers conducting
> interrogations, this is an objective
> inquiry.  Invocation of the Miranda right to
> counsel requires, at a minimum, some

statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning.

Id. at 458-59 (citations and quotations omitted).

The prohibition of further questioning after clear assertion of the right to counsel during custodial interrogation is not required by the Fifth Amendment's prohibition on coerced confessions, rather, it is a prophylactic rule created by the courts. In declining to expand the rule, the Court in Davis further stated:

But when the officers conducting the questioning reasonably do not know whether or not the suspect wants a lawyer, a rule requiring the immediate cessation of questioning would transform the Miranda safeguards into wholly irrational obstacles to legitimate police investigative activity, because it would needlessly prevent the police from questioning a suspect in the absence of counsel even if the suspect did not wish to have a lawyer present.

Id. at 460 (citations and quotations omitted).

Declining to adopt a rule requiring questions clarifying a suspect's ambiguous statements, the Davis Court stated:

But we are unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect might want a lawyer.

> Unless the suspect actually requests an attorney, questioning may continue.

Id. at 462.

From the direction given by the United States Supreme Court in Davis, two things are abundantly clear:  1) the test to determine if the statement of the defendant "clearly asserts" his right to counsel is an objective test viewed through the eyes of a reasonable police officer in light of the totality of the circumstances; and, 2) the officer has no duty to ask questions to resolve ambiguity before questioning may continue.

The burden is initially upon the Commonwealth to prove a waiver of Miranda rights.  As we have previously stated:

> The Commonwealth bears the burden of proving by a preponderance of the evidence that the accused waived his Miranda rights.  It must show that the accused knowingly and intelligently waived the constitutional privilege against self-incrimination and the right to counsel.  Additionally, the Commonwealth must prove the voluntariness of a defendant's confession by a preponderance of the evidence.  Whether a confession is voluntary requires an independent examination of the totality of the circumstances to determine whether the statement is the product of an essentially free and unconstrained choice by its maker, or whether the maker's will has been overborne and his capacity for self-determination critically impaired.  In making this independent determination, however, an appellate court is bound by the trial court's subsidiary factual findings unless those findings are plainly wrong.  Conflicts in evidence present factual questions that are to be resolved by the trial court, and whether an accused requested counsel is also a factual

> determination that will not be disturbed on appeal unless clearly erroneous.

Mills v. Commonwealth, 14 Va. App. 459, 468, 418 S.E.2d 718, 722-23 (1992) (internal citations omitted).

Although an express written or oral statement of waiver of the right to remain silent or of the right to counsel is strong evidence of waiver, it is not necessary. "[W]aiver can be clearly inferred from the actions and words of the person interrogated." North Carolina v. Butler, 441 U.S. 369, 373 (1979).

McDaniel was read a statement of his Miranda rights at his home. The detective testified that McDaniel understood them and continued to engage in conversation as he gave the detective permission to search his home. Upon discovery of a "gas-powered Sears pressure washer," McDaniel was transported to Investigative Services for further interrogation. Only after McDaniel reached the police station, and while the investigating officer and McDaniel were "discussing the case" did McDaniel make the equivocal statement "I think I would rather have an attorney here to speak for me."

Even McDaniel focuses his argument upon whether he made an unequivocal invocation of the right to counsel after previously waiving his rights under Miranda. In his brief, McDaniel states:

> Here, Mr. McDaniel was advised of his rights, seemed to understand them, then

transported to an investigating area, where he asked for an attorney prior to <u>any more questioning</u>.

(Emphasis added).

The Supreme Court in <u>Davis</u> clearly stated that after a waiver of <u>Miranda</u> rights,

[the suspect] must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.  If the statement fails to meet the requisite level of clarity, <u>Edwards</u> does not require that the officers stop questioning the suspect.

<u>Davis</u>, 512 U.S. at 459.  The trial court found that McDaniel's statement did not meet this test.

Counsel for McDaniel conceded at oral argument that the statement "I think I would rather have an attorney here to speak for me" could have several meanings depending upon context and other circumstances such as voice inflection and body language. The majority is unwilling to embrace the honest concession of counsel and simply declares the words themselves to be unambiguous.  The majority focuses upon the trial court's observation that "[t]he word 'rather' in the middle of the sentence indicates some degree of choice."  The majority ignores the trial judge's consideration of the context of the declaration and circumstances surrounding it and concludes "[t]he statement, as ordinarily understood, is unambiguous."

The majority's sole focus upon the word "rather" both fails to apply the objective analysis required under <u>Davis</u> and ignores its context within the sentence.  McDaniel did not state "I would rather have an attorney here to speak for me."  McDaniel stated "<u>I think</u> I would rather have an attorney here to speak for me."  (Emphasis added).  The trial court's finding was based upon the statement as a whole, not merely upon its interpretation of the word "rather."

A correct analysis of the statement requires that we consider the statement in its entirety.  The word "think" is defined as "to believe, to consider, to conclude, to esteem; to recollect or call to mind."  <u>Black's Legal Dictionary</u> 1479 (6th ed. 1990).  The existence of numerous and diverse definitions, including, "to consider" underscores the ambiguity of the term "think."  When the sentence is considered in its entirety, "I think" imports inherent ambiguity to the term "rather" and to the sentence as a whole.  Again, McDaniel's counsel agreed, but the majority has chosen to ignore his concession.

As the United States Supreme Court has made abundantly clear, the trial court must ask if a reasonable police officer would have considered the utterance in context and under circumstances sufficient to constitute a clear assertion of the right to counsel.  In this case the trial court considered the testimony of witnesses concerning the circumstances surrounding the statement made by McDaniel.  Although rejecting the

conclusion drawn by the officer that the defendant was asking a question, it is clear that the trial court agreed with the officer that the statement made by McDaniel was equivocal and ambiguous such that it invited a response from the detective. The detective referred to "emotion," "demeanor," and "body language," and the trial court was entitled to rely upon this testimony in its interpretation of McDaniel's statement. Just as the law has historically trusted spontaneous utterances to be trustworthy, the trial court was entitled to consider the spontaneous reaction of the detective as evidence of the equivocal nature of McDaniel's statement. Unless the trial court's finding is clearly wrong or without evidence to support it, basic appellate principles require that we uphold its ruling.

Our Court and the Supreme Court of Virginia have engaged in the same analysis in an effort to apply legal principles of higher courts while demonstrating deference to the factual findings of the trial court. In Midkiff v. Commonwealth, 250 Va. 262, 462 S.E.2d 112 (1995), the Supreme Court of Virginia applied the objective test set out in Davis. The Court held that the suspect's statement "I'm scared to say anything without talking to a lawyer" was not a clear and unequivocal invocation of the right to counsel and that the trial court did not err in refusing to suppress his statements that followed.

Recently, in Green v. Commonwealth, 27 Va. App. 646, 500 S.E.2d 835 (1998), we considered whether a suspect's statement that "he didn't know anything about this incident and he wasn't going to say anything else unless he had an attorney" was a clear and unequivocal invocation of the right to counsel. Green argued that his statement constituted a clear and unequivocal request for counsel and that any statement made by him that followed should have been suppressed.

We rejected Green's argument, relying on various cases which the majority opinion in this case attempts to distinguish from the case now before us. We reiterated the objective test in Davis, stating, "[t]he Virginia Supreme Court has declared that a clear and unambiguous assertion of the right to remain silent or to counsel is necessary before authorities are required to discontinue an interrogation." Green, 27 Va. App. at 653, 500 S.E.2d at 838.

It is important to note that both the Arizona and Ohio Supreme Courts have considered nearly the identical issue before us. See State v. Eastlack, 883 P.2d 999 (Ariz. 1994); State v. Henness, 679 N.E.2d 686 (Ohio 1997). In Eastlack, during custodial interrogation the defendant stated, "I think I better talk to a lawyer first." Finding that the statement was not an unequivocal request for counsel, the court stated, "[t]he statement itself was ambiguous, using the equivocal language 'I think' rather than, the language of a clear request." Eastlack,

883 P.2d at 1007.  In Henness, the court observed, "we find that appellant's statement 'I think I need a lawyer . . .' is just as ambiguous as the statement made by the defendant in Davis." Henness, 679 N.E.2d at 696.

Courts in other states have reached similar results.  In State v. Parker, 886 S.W.2d 908 (Mo. 1994), the Supreme Court of Missouri held that the defendant's statement that "neither Parker's refusal to sign the waiver form, nor his statement that he 'ought' to talk to a lawyer" constituted an unambiguous invocation of his right to counsel.  Id. at 918 (emphasis added).  In State v. Travis, 545 P.2d 986 (Ariz. App. 1976), the Court of Appeals of Arizona held that it did not consider the defendant's statements that "he might want an attorney" to be "sufficient to have required cessation of further questioning." Id. at 991.  Similarly, in People v Kendricks, 459 N.E.2d 1137 (Ill. App. 1 Dist. 1984), the Appellate Court of Illinois held that the defendant's statement to the police that "You know, I kind of think I know [sic] a lawyer, don't I?" or "I think I might need a lawyer" were not clear assertions of the right to counsel.  The Kendricks court relied heavily upon the reasoning in People v. Krueger, 412 N.E.2d 537 (Ill. 1980).  In Krueger, the Illinois appellate court held that the defendant's statement, "Maybe I ought to have an attorney," "Maybe I need a lawyer," or "Maybe I ought to talk to an attorney" was not a

clear, unambiguous invocation of the right to counsel, and the officers were not required to cease questioning.  Id. at 540.

Additionally, in the context of jury selection we have found juror responses such as, "I think," "I don't know," and "I would try" to be statements of equivocation.  See Brown v. Commonwealth, 29 Va. App. 199, 510 S.E.2d 751 (1999).  The majority's assertion that the phrase "I think" is unambiguous as a matter of law in the context of a request for counsel is impossible to reconcile.

Given the passage of time from the initial reading of Miranda rights, the search of his home in his presence and by consent, and the continued dialogue with the detective about the case, the trial judge did not err in concluding that McDaniel waived his Miranda rights and analyzing the case under Edwards and Davis.  Further, I believe, as the Supreme Courts of Arizona and Ohio have concluded, the language utilized by McDaniel is ambiguous on its face.  Additionally, the factual circumstances and context of the statement also provide ample evidence of its ambiguity.  Applying the legal principles articulated by courts above and proper deference to factual findings and reasonable inferences drawn by the trial court, I would hold that McDaniel's statement was not a clear assertion of his right to counsel.  I would uphold the convictions.