Tuesday         23rd

        October, 2001.


Torie Devon Redmond,                                          Appellant,

  against        Record No. 0762-00-1
                 Circuit Court No. CR99-3244

Commonwealth of Virginia,                                     Appellee.


                      Upon a Rehearing En Banc

        Before Chief Judge Fitzpatrick, Judges Benton, Elder,
      Bray, Annunziata, Bumgardner, Frank, Clements, and Agee


                 Edward W. Webb (Office of the Public
                 Defender, on brief), for appellant.

                 Leah A. Darron, Assistant Attorney
                 General (Randolph A. Beales, Attorney
                 General, on brief), for appellee.



        By unpublished opinion, a divided panel of this Court

reversed the appellant's conviction and remanded for a new

trial.  Redmond v. Commonwealth, No. 0762-00-1 (Va. Ct. App. May

22, 2001).  We stayed the mandate of that decision and granted

rehearing en banc.

        Upon a rehearing en banc, the stay of the May 22, 2001

mandate is lifted, and the judgment of the trial court is

reversed and remanded for a new trial in accordance with the

majority panel opinion.

Judges Bray, Bumgardner, and Agee dissent for the reasons set forth in the panel dissent.

This order shall be certified to the trial court.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

-

COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Bray and Frank
Argued at Chesapeake, Virginia


TORIE DEVON REDMOND

                                         MEMORANDUM OPINION* BY
v.    Record No. 0762-00-1           JUDGE JAMES W. BENTON, JR.
                                               MAY 22, 2001
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                     Alan E. Rosenblatt, Judge

             Edward W. Webb (Office of the Public
             Defender, on brief), for appellant.

             Leah A. Darron, Assistant Attorney General
             (Mark L. Earley, Attorney General, on brief),
             for appellee.


     On this appeal, Torie Devon Redmond contends that the police

obtained a statement from him in violation of the Fifth Amendment

and that a trial judge erred in refusing to suppress the

statement.  For the reasons that follow, we reverse the conviction

and remand for a new trial.

                                I.

     The facts pertaining to the motion to suppress are

essentially undisputed.  On May 7, 1999, the police arrested

Redmond for the murder of Gattis Bowling, Jr., and took Redmond to

an interview room.  The record contains a videotape and written

_____
        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

                                -

transcript of the interrogation of Redmond by Detective

Christopher C. Molleen.  Prior to advising Redmond of his <u>Miranda</u>

rights, Detective Molleen made several comments including the

following:

> [DETECTIVE]:  . . . . It's no miracle that you're down here.  Okay?  Um, we've been doing a lot of investigating here lately, you have seen us in the neighborhood for the last few days.  Probably one of the worst things you can do is underestimate me or some the guys that are in here.  Okay?
>
> [REDMOND]:  Hm Hmm.
>
> [DETECTIVE]:  Keep that in mind.  It's not pick on Torie Redmond day.  I don't know Torie Redmond that well.  Torie Redmond ain't never done anything to me.  Okay?  I'm not here to, uh, bring you down or make things tough on you, but we got some things that we need to get straight.  And you know it's no miracle why you're here.  Deep down you do.  And we'll talk about it.  You know, a lot of times in life you go out and do something and it can start off as one thing and end up another thing.  And that's the bottom line.  You can have the best intentions or the worst intentions, and things can happen quick and you get out of hand and things can happen.  So, like I told you, you're not here by accident and if you listen to what I've got to say and make a smart decision.  You're under arrest.  You're in custody.  You know what case I'm investigating, and that's what you're under arrest for.  So, what I'm going to do is I'm going to advise you of your rights and we'll sit here and try to have an intelligent conversation.  You just remember, you know, there's a lot, there's a lot of difference, there's a lot of differences in crimes.  Okay?  And this is a very serious crime and you don't want to leave serious crimes up to speculation.  And so I could speculate and make it into one thing.  We could speculate,

it would be another thing when actually it's
something else.  Okay, you can speculate
that it's very serious or a bad situation,
an accidental situation or could look very
cruel.  You know what I'm saying?  Does that
make sense?

[REDMOND]:  Pretty much.

[DETECTIVE]:  Well, I'm telling you.  And
I'll tell you a couple examples exactly
what.  You have the right to remain silent.
Anything you say can be used against you in
Court.  You have the right to talk to a
lawyer and have him present with you while
you are being questioned.  If you cannot
afford to hire a lawyer, one will be
appointed to represent you before any
questioning, if you wish.  You can decide at
any time to exercise these rights, not
answer any questions or make any statements.
Do you understand?

[REDMOND]:  Yeah.

For several minutes after this exchange, the detective made

other lengthy comments to Redmond indicating he could prove

Redmond's involvement and urging Redmond to respond.

[DETECTIVE]:  You have to tell the truth and
if you don't try to hide something, I'm
going to prove you're hiding it.  And,
ultimately, you know, you're the one that's
going to suffer the consequences, not me.

[REDMOND]:  I don't want to seem arrogant or
nothing like that.

[DETECTIVE]:  I don't want, Tory.

[REDMOND]:  These are some pretty deep
charges.

[DETECTIVE]:  Listen to what I got to say.
I don't think.  I don't want you to seem
arrogant.  Okay.  I don't want you to seem
arrogant.  I want you to do the best thing
for yourself.  And the best thing for

yourself is you need to take some of the
heat off your back.  Yeah, they are very
serious charges.  This is the only
opportunity you're ever going to talk and
give your side.  Period.  This is . . .

[REDMOND]:  Can I speak to my lawyer?  I
can't even talk to lawyer before I make any
kinds of comments or anything?

[DETECTIVE]:  You can do anything you like,
but I'm telling, I'm telling you like this.
You have the freedom to do anything you
want.  You have the freedom to go to sleep
right now if you want to do that.  Okay?
You have the freedom to sit here and talk to
me.  Okay?  The point is and what I'm trying
to tell you is, this is your opportunity;
this is your time.  There ain't tomorrow,
there ain't later.  Okay?  There's not
later.  There is no later.  And I'm trying,
I'm trying to give you because you are a 24
year old man the opportunity to help
yourself out a little bit.

After several minutes of further lengthy comments by the

detective, Redmond confessed his involvement in the murder of

Bowling.

After considering the videotape of the interrogation, the

transcript of the interrogation, and the argument of counsel, a

judge ruled prior to trial that Redmond's statement was

"equivocal; and, therefore, it's not a clear invoking of his

rights."  Thus, the judge denied the motion to suppress the

statement.  Following trial, a jury convicted Redmond of first

degree murder.  This appeal followed.

II.

"The warnings mandated by [Miranda v. Arizona, 384 U.S. 436, 467-73 (1966)], as a prophylactic means of safeguarding Fifth Amendment rights, require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation." Doyle v. Ohio, 426 U.S. 610, 617 (1976) (citation omitted). The police must explain these rights to the accused "before questioning begins." Davis v. United States, 512 U.S. 452, 457 (1994). After the police explain these rights, "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." Miranda, 384 U.S. at 474.

"[T]he Court fashioned in Miranda the rigid rule that an accused's request for an attorney is per se an invocation of his Fifth Amendment rights requiring that all interrogation cease." Fare v. Michael C., 442 U.S. 707, 719 (1979). See also Edwards v. Arizona, 451 U.S. 477, 485-86 (1981).

> [T]he test for determining whether the accused invoked the right to counsel is an objective one. The Court must determine whether the accused "articulate[d] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."

- 7 -

<u>McDaniel v. Commonwealth</u>, 30 Va. App. 602, 605, 518 S.E.2d 851, 853 (1999) (en banc) (quoting <u>Davis</u>, 512 U.S. at 459).

When the detective began the interrogation, he did not immediately give Redmond the <u>Miranda</u> warnings and never inquired whether Redmond wished to make a statement or waive his right to counsel.  Instead, he first began by telling Redmond he was "not [there] by accident" and that Redmond should "make a smart decision."  He then informed Redmond that he was "going to advise [Redmond] of [his] rights and we'll sit here and try to have an intelligent conversation."  At no time did the detective inquire of Redmond whether Redmond wished to waive his <u>Miranda</u> rights and speak to him.  The implicit message in the interrogation prior to the giving of the <u>Miranda</u> warnings is that they will have a "conversation" after the reading of his rights.  Indeed, that is precisely what the detective sought to do until Redmond said "Can I speak to my lawyer?  I can't even talk to a lawyer before I make any kind of comments or anything?"

Redmond's statement "Can I speak to my lawyer" is an unambiguous request to talk to his counsel and was directly responsive to the detective's earlier warning that "You have the right to talk to a lawyer."  If there could have been any doubt about Redmond's intention, his further request would have alerted any reasonable police officer of his purpose.  When he said, "I can't even talk to a lawyer before I make any kind of

- 8 -

comments or anything?," he reinforced his inability to deal with the interrogation without counsel.

Without any doubt, the detective's response to Redmond demonstrates that he understood Redmond's statements to be a request for counsel. Rather than stopping the interrogation, the detective made a lengthy response, which began with the following:

> [DETECTIVE]: You can do anything you like, but I'm telling, I'm telling you like this. You have the freedom to do anything you want. You have the freedom to go to sleep right now if you want to do that. Okay? You have the freedom to sit here and talk to me. Okay? The point is and what I'm trying to tell you is, this is your opportunity; this is your time. There ain't tomorrow, there ain't later. Okay? There's not later. There is no later. And I'm trying, I'm trying to give you because you are a 24 year old man the opportunity to help yourself out a little bit.

Thus, instead of honoring the request as required by Miranda, Edwards, and their progeny, the detective deflected Redmond's request with the generalized notion that Redmond could "do anything you like." He then sought to persuade Redmond "to help [him]self" and talk without counsel. He continued the interrogation even though Redmond did not waive his Miranda rights. We hold that in so doing the detective gained Redmond's statement in violation of his Fifth Amendment rights.

Redmond's statement included his confession that he stabbed the deceased and described the circumstances of the stabbing. The introduction of that statement at trial was not harmless. Even if "the other evidence amply supports the jury's verdicts [the error is not harmless when] the disputed testimony may well have affected the jury's decision." Catera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978).  Accordingly, we reverse the conviction and remand for a new trial.

Reversed and remanded.

Bray, J., dissenting.

> In the years since <u>Miranda</u>, it has become well established that once an accused expresses a desire to exercise his right to counsel, authorities may not further interrogate the accused until counsel is present unless the accused initiates further conversation or exchanges with the authorities.

<u>Midkiff v. Commonwealth</u>, 250 Va. 262, 266, 462 S.E.2d 112, 114 (1995) (citing <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981)). However, the Virginia Supreme Court "has consistently held that a <u>clear</u> and <u>unambiguous</u> assertion of the right to counsel is necessary to invoke the <u>Edwards</u> rule." <u>Id.</u> at 266, 462 S.E.2d at 115 (emphasis added); <u>Green v. Commonwealth</u>, 27 Va. App. 646, 653, 500 S.E.2d 835, 838 (1998). Thus, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable police officer in light of the circumstances would have understood only that the suspect <u>might</u> be invoking the right to counsel," questioning need not cease. <u>Davis v. United States</u>, 512 U.S. 452, 459 (1994) (emphasis added).

In undertaking an <u>Edwards</u>/<u>Davis</u> analysis, a trial court must apply an objective test to determine if an accused "'articulate[d] his desire to have counsel present sufficiently clearly'" for a "'reasonable police officer'" to "'understand the statement to be a request for an attorney.'" <u>McDaniel v. Commonwealth</u>, 30 Va. App. 602, 605, 518 S.E.2d 851, 853 (1999) (quoting <u>Davis</u>, 512 U.S. at 459). "[W]hether an accused

- 11 -

requested counsel is . . . a <u>factual determination</u> that will not be disturbed on appeal unless <u>clearly erroneous</u>."  <u>Mills v. Commonwealth</u>, 14 Va. App. 459, 468, 418 S.E.2d 718, 723 (1992) (citations omitted) (emphasis added).

Here, during an <u>ore</u> <u>tenus</u> hearing to address defendant's motion to suppress, the trial court viewed the videotape of the subject interrogation, together with a transcript of the exchange.  Thereafter, following argument of counsel and a review of relevant case law, the court expressed "no problem at all" finding defendant's query to Detective Molleen, "Can I speak to my lawyer?," "somewhat ambiguous."  A review of the record discloses no clear error in the court's factual finding.

When defendant inquired, "Can I speak to my lawyer?," followed, without pause or interruption, by, "I can't even talk to [a] lawyer before I make any kinds of comments or anything?," he was, perhaps, seeking clarification or confirmation of the <u>Miranda</u> right to counsel.  Accordingly, Molleen perceived a question and, in response, assured defendant, "You can do anything you like . . . .  You have the freedom to do anything you want," followed by additional comments that were neither coercive nor misleading.  Thus, simply stated, defendant was properly advised of his <u>Miranda</u> rights, asked two related questions of Molleen, both of which were properly answered, and, without further inquiry, confessed to the offense.  Such

evidence does not reflect an unambiguous, unequivocal invocation of the right to counsel.

I, therefore, respectfully dissent.