STATE OF NORTH CAROLINA v. TERRY LEE DIX

No. COA07-1440

(Filed 2 December 2008)

**1. Confessions and Incriminating Statements— right to counsel—ambiguous invocation of right**

The trial court erred in a multiple statutory sex offense, multiple indecent liberties with a child, and secret peeping case by concluding that defendant's statement "I'm probably gonna have to have a lawyer" constituted an unambiguous invocation of his right to counsel requiring suppression of his recorded statement because: (1) although when a suspect makes an ambiguous statement it will often be good police practice for the interviewing officer to clarify whether he actually wanted an attorney, such clarifying questions are not required; (2) defendant's statement, taken out of context, cannot be the sole determinate of whether defendant unambiguously invoked his right to counsel when defendant had already expressed a desire to "tell his side of the story" to a detective, was asked by the detective to wait until they were back at the station, and yet gave a brief, unsolicited oral confession to a sergeant en route to the station; (3) after being told about defendant's confession to the sergeant, the detective reasonably expected defendant to continue their formal conversation and proceed with the statement defendant apparently wished to make; (4) defendant's statement was ambiguous since no reasonable officer under the circumstances would have understood defendant's words as an unambiguous actual request for an attorney at that moment, as opposed to a mere comment about the likelihood that defendant would eventually require the services of an attorney in this matter; and (5) the detective's attempt to clarify what defendant wanted to do evidenced the ambiguous nature of defendant's statement under the circumstances.

**2. Confessions and Incriminating Statements— right to counsel—resolution of ambiguity in favor of defendant not required**

The trial court was not required in a multiple statutory sex offense, multiple indecent liberties with a child, and secret peeping case to resolve any ambiguity in defendant's statement about the need for counsel in defendant's favor because: (1) the detective did not dissuade defendant from exercising his right to have

an attorney, and the detective's attempt to clarify what defendant wanted to do could not be equated to badgering, intimidating, threatening, or even ignoring defendant; (2) this case involved an ambiguous reference to an attorney that a reasonable officer under the circumstances would have only understood might be an invocation of the right to counsel, and thus, neither the complete cessation of questioning nor the limitation of questioning to clarifying questions was required; and (3) the detective was not required to ask clarifying questions.

Appeal by the State from judgment entered 15 August 2007 by Judge John O. Craig in Randolph County Superior Court. Heard in the Court of Appeals 25 August 2008.

*Roy Cooper, Attorney General, by Charles E. Reece, Assistant Attorney General, for the State.*

*Appellate Defender Staples Hughes, by Anne M. Gomez, Assistant Appellate Defender, for defendant-appellee.*

MARTIN, Chief Judge.

The State appeals, pursuant to N.C.G.S. § 15A-979(c), from an order suppressing statements made by Terry Lee Dix ("defendant") to Detective McMasters of the Asheboro Police Department. The evidence before the trial court at the hearing upon the motion to suppress tended to show that, on March 22, 2006, Detective McMasters and Sergeant Cook of the Randolph County Sheriff's Department served defendant with warrants charging him with three counts of statutory sex offense, three counts of taking indecent liberties with a child, and one count of secret peeping. Detective McMasters and Sergeant Cook located defendant at his residence, where they placed him under arrest. Before being transported to the police station, defendant indicated his willingness to talk with Detective McMasters and tell his story. However, Detective McMasters told defendant to wait until they arrived at the jail. Detective McMasters indicated to defendant that, once at the station, she would first advise defendant of his rights and then listen to his side of the story, "[c]ause there's two sides to every story."

Defendant was then transported in custody to the Randolph County Jail by Sergeant Cook. While he was being transported, defendant made a brief unsolicited oral confession to Sergeant Cook, who related this information to Detective McMasters. At the police

**STATE v. DIX**

[194 N.C. App. 151 (2008)]

station, defendant was taken to an interrogation room and "miran-dized" by Detective McMasters. When Detective McMasters asked defendant if he understood his rights, defendant replied, "yeah." Immediately thereafter, Detective McMasters and defendant engaged in the following conversation:

McMasters: Okay. And will you answer some questions for me?

Defendant: I'm probably gonna have to have a lawyer.

McMasters: Okay but, ya know, I mean, okay. But, ya know, I mean, it's up to you if you wanna answer questions or not. I mean, you can answer till you don't feel comfortable, whatever and then not answer. Ya know, that's totally up to you. I know earlier you said you was wanting to talk to me because . . . .

Defendant: Yeah.

McMasters: . . . of course there's two sides . . .

Defendant: Yeah.

McMasters: . . . to every story.

Defendant: But, no . . .

McMasters: Uhm . . .

Defendant: I . . .

McMasters: You wanna talk, ok.

Defendant: Yeah.

Thereafter, defendant signed a Waiver of Miranda Rights form and Detective McMasters proceeded to conduct a recorded interview with defendant which lasted approximately fifteen minutes.

At trial, Detective McMasters testified that, from defendant's statement, "I'm probably gonna have to have a lawyer," she "was unclear whether he wanted to talk to me or not with the way he approached me at the address on Brittain. He was wanting to tell me what was going on or what had went on." Detective McMasters was then asked what her purpose was in saying to defendant, "I know, I mean, it's up to you if you want to answer questions or not. I mean, you can answer till you don't feel comfortable, whatever, and then not

answer. You know, it's totally up to you. I know . . . you said you was wanting to talk to me." Detective McMasters replied, "I was wanting to clarify what he was wanting to do."

After hearing evidence and arguments, the trial court made findings of fact and conclusions of law, including, *inter alia*, the following:

> 5) Immediately following advisement of his Miranda Rights, the defendant invoked his right to counsel by stating to the detective, "I'm probably gonna have to have a lawyer";
>
> 6) Detective McMasters did not ask defendant any questions seeking to clarify his request for an attorney after defendant made his statement. The Court concludes that it is required to resolve any ambiguity in defendant's statement in favor of the individual. *State v. Torres*, 330 N.C. 517, 412 S.E.2d 20 (1992);[1]
>
> 7) After defendant's invocation of his right to counsel, the Waiver secured by Detective McMasters cannot be considered valid. *Edwards v. Arizona*, 451 U.S. 477, 68 L.E.2d 378 (1981).

Based on these conclusions of law, the trial court ordered the defendant's recorded statement to Detective McMasters suppressed.

---

**[1]** On appeal, the State contends the trial court's suppression of defendant's statement was error for the following reasons: 1) defendant's statement was ambiguous and thus not an invocation of his right to counsel; 2) Detective McMasters did seek clarification following defendant's ambiguous statement, but was not required to do so; and 3) the trial court was not required to resolve any ambiguity in defendant's favor. We will first address whether defendant's statement constituted an invocation of his right to counsel.

The trial court's findings of fact after a hearing concerning the admissibility of a confession are conclusive and binding on this Court when supported by competent evidence. *See Barber*, 335 N.C. at 129, 436 S.E.2d at 111. The trial court's conclusions of law, however, are reviewable *de novo*. *See id.* Under this standard, the legal significance

---

1. Although denominated as conclusions of law, conclusions 5 and 6 contain mixed findings of fact, which do not involve the application of legal principles, *see Coble v. Coble*, 300 N.C. 708, 713, 268 S.E.2d 185, 189 (1980), and conclusions of law. To the extent the trial court's conclusions contain findings of fact, these findings are binding upon us if supported by competent evidence. *See State v. Barber*, 335 N.C. 120, 129, 436 S.E.2d 106, 111 (1993), *cert. denied*, 512 U.S. 1239, 129 L. Ed. 2d 865 (1994). Otherwise, we review these conclusions de novo. *See id.*

of the findings of fact made by the trial court is a question of law for this Court to decide. *See State v. Davis*, 305 N.C. 400, 415, 290 S.E.2d 574, 583 (1982).

The *Miranda* right to counsel is the right of a defendant to have an attorney present during custodial interrogation "[i]f . . . he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking." *Miranda v. Arizona*, 384 U.S. 436, 444-45, 16 L. Ed. 2d 694, 707 (1966). In *Davis v. United States*, 512 U.S. 452, 129 L. Ed. 2d 362 (1994), the United States Supreme Court held that to invoke his right to counsel, "the suspect must unambiguously request counsel." *Id.* at 459, 129 L. Ed. 2d at 371. The invocation of the right to counsel " 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.' " *Id.* (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178, 115 L. Ed. 2d 158, 169 (1991)). The test is an objective one that assesses whether a reasonable officer under the circumstances would have understood the statement to be a request for an attorney. *See id.* This test examines more than the mere words used by a defendant. *See Barber*, 335 N.C. at 130, 436 S.E.2d at 111 ("In deciding whether a person has invoked her right to counsel, therefore, a court must look not only at the words spoken, but the context in which they are spoken as well.") (citations omitted). In fact, the understanding of the officer to whom a defendant's statement is made may be indicative of how a reasonable officer under the circumstances would have interpreted the defendant's statement. *See State v. Jackson*, 348 N.C. 52, 57, 497 S.E.2d 409, 412 (1998), *abrogated on other grounds by State v. Buchanan*, 353 N.C. 332, 543 S.E.2d 823 (2001). As such, "the *likelihood* that a suspect would wish counsel to be present is not" the proper standard. *McNeil*, 501 U.S. at 178, 115 L. Ed. 2d at 168 (emphasis in original). While "there are no 'magic words' which must be uttered in order to invoke one's right to counsel," *Barber*, 335 N.C. at 130, 436 S.E.2d at 111, "a statement either is such an assertion of the right to counsel or it is not." *Davis*, 512 U.S. at 459, 129 L. Ed. 2d at 371. It is well settled that, during custodial interrogation, once a suspect invokes his right to counsel, all questioning must cease until an attorney is present or the suspect initiates further communication with the police. *See Edwards v. Arizona*, 451 U.S. 477, 485, 68 L. Ed. 2d 378, 386 (1981). However, "[i]f the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." *Davis*, 512 U.S. at 461-62, 129

L. Ed. 2d at 373. Thus, unless the in-custody suspect "actually requests" an attorney, and thus invokes his right to counsel, lawful questioning may continue. *Davis*, 512 U.S. at 462, 129 L. Ed. 2d at 373; *State v. Hyatt*, 355 N.C. 642, 655, 566 S.E.2d 61, 70 (2002); *State v. Barnes*, 154 N.C. App. 111, 118, 572 S.E.2d 165, 170 (2002); *see also State v. Ash*, 169 N.C. App. 715, 721, 611 S.E.2d 855, 860 (2005). Although the *Davis* Court noted in dicta that, "when a suspect makes an ambiguous statement it will often be good police practice for the interviewing officer[] to clarify whether or not he actually wants an attorney," such clarifying questions are not required. *Davis*, 512 U.S. at 461, 129 L. Ed. 2d at 373.

In *Davis*, the Court held that a suspect's statement, "Maybe I should talk to a lawyer," was not a request for counsel. *See id.* at 462, 129 L. Ed. 2d at 373. In reaching this conclusion, the Court emphasized the importance of context. The defendant in *Davis* made the statement about an hour and a half into his interrogation, at which point officers asked the defendant whether he was asking for a lawyer or just making a comment about a lawyer. *See id.* at 455, 129 L. Ed. 2d at 368. Because a reasonable officer under the circumstances would not have understood the *Davis* defendant's statement to be a request for an attorney, the Court ruled the defendant's right to an attorney was not violated when defendant responded that he did not want a lawyer and officers resumed questioning. *See id.* at 459, 129 L. Ed. 2d at 371.

In the case at bar, defendant's statement, "I'm probably gonna have to have a lawyer," taken out of context, cannot be the sole determinate of whether defendant unambiguously invoked his right to counsel. Defendant had already expressed a desire to "tell his side" of the story" to Detective McMasters, was asked by the detective to wait until they were back at the station, and yet gave a brief, unsolicited oral confession to Sergeant Cook en route to the station. After being told about defendant's confession to Sergeant Cook, Detective McMasters reasonably expected defendant to continue their former conversation and proceed with the statement defendant apparently wished to make. Thus, when defendant remarked, "I'm probably gonna have to have a lawyer," Detective McMasters was understandably unsure of defendant's purpose. By this statement, defendant neither refused nor agreed to answer Detective McMasters's questions without an attorney present. In this context, defendant's statement was ambiguous because no reasonable officer under the circumstances would have understood defendant's

words as an unambiguous, "actual request" for an attorney at that moment, as opposed to a mere comment about the likelihood that defendant would eventually require the services of an attorney in this matter, which he surely anticipated would involve criminal proceedings. Detective McMasters's attempt to "clarify what he wanted to do" evidences the ambiguous nature of defendant's statement under the circumstances. Accordingly, we hold the trial court's conclusion that defendant's statement was an unambiguous invocation of his right to counsel was error.

[2] We turn next to the trial court's conclusion that it was required to resolve any ambiguity in defendant's statement in favor of the individual. The trial court cites language from *State v. Torres*, a case which predates *Davis*, as authoritative on the matter. *See State v. Torres*, 330 N.C. 517, 530, 412 S.E.2d 20, 27 (1992). In *Torres*, our Supreme Court held that the defendant invoked her right to counsel when she twice inquired of sheriff's officials whether she needed an attorney. *See id.* However, in that case, police dissuaded defendant from exercising her right to have counsel present during interrogation. *See id.* Although the *Torres* court concluded that the defendant's statement was unambiguous, the majority noted "even if defendant's invocation in this case is termed ambiguous," the result should remain the same under the rule utilized in a majority of jurisdictions. *See id.* at 529, 412 S.E.2d at 27. This rule provided that, when faced with an ambiguous invocation of counsel, interrogation must immediately cease except for narrow questions designed to clarify the suspect's true intent. *See id.* at 529, 412 S.E.2d at 27. However, the rule enunciated in *Davis* that, "[u]nless the in-custody suspect 'actually requests' an attorney, lawful questioning may continue," abrogated the then-majority rule discussed in *Torres*. *See Hyatt*, 355 N.C. at 655, 566 S.E.2d at 70 (citing *Davis*, 512 U.S. at 462, 129 L. Ed. 2d at 373). The *Davis* rule imposes the burden of resolving any ambiguity as to whether a suspect wishes to invoke his right to counsel upon the individual, rather than leaving the question up to the interrogating officer. *See Davis*, 512 U.S. at 475, 129 L. Ed. 2d at 381-82.

Although the officer is not required to ask any clarifying questions when an ambiguous statement is made, we note that Detective McMasters did not dissuade defendant from exercising his right to have an attorney. As discussed above, it was reasonable for Detective McMasters to expect defendant to continue their former conversation and proceed with the statement defendant apparently wished to make. Accordingly, Detective McMasters's confusion after defend-

ant's ambiguous statement was also reasonable. She responded, "It's up to you if you wanna answer questions or not. I mean, you can answer till you don't feel comfortable, whatever and then not answer. Ya know, that's totally up to you. I know earlier you said you was wanting to talk to me because . . . ." While we do not disturb the trial court's finding that Detective McMasters asked no clarifying questions, we note that the detective's response reflects her confusion. The detective's subsequent testimony further evidences her desire to clarify defendant's statement. Detective McMasters's attempt to "clarify what he wanted to do" cannot be equated to badgering, intimidating, threatening, or even ignoring the defendant. Thus, the facts of this case more closely resemble the facts of *Davis* than those described in *Torres*. Because this case, like *Davis*, involves an ambiguous reference to an attorney that a reasonable officer under the circumstances would have only understood *might* be an invocation of the right to counsel, neither the complete cessation of questioning nor the limitation of questioning to clarifying questions was required. *See Davis*, 512 U.S. at 459, 129 L. Ed. 2d 369. Accordingly, the trial court's assumption that Detective McMasters was required to ask clarifying questions, and its subsequent conclusion that it was required to resolve any ambiguity in the defendant's favor were error.

In his brief, defendant argues that Detective McMasters's response to defendant's ambiguous statement, if not a violation of defendant's rights under *Davis*, did violate defendant's rights under Article I, Section 23 of the North Carolina Constitution. That section provides in part, "every person charged with a crime has the right . . . not to be compelled to give self-incriminating evidence." N.C. Const. art. I, § 23.

Defendant's argument relies heavily on the concurring opinion of Justice Harry Martin in *Torres*. In that case Justice Martin reasoned, based solely on state constitutional grounds, that continued questioning after an individual's invocation of the right to counsel violates the right not to give self-incriminating evidence. *See Torres*, 330 N.C. at 531, 412 S.E.2d at 28. However, defendant's reliance on this portion of *Torres* is ill-founded because Justice Martin, like the majority, concluded that the defendant's request for an attorney in that case was unambiguous and thus tantamount to an invocation of the right to counsel. *See id.* at 533, 412 S.E.2d at 30. As such, Justice Martin's reasoning does not apply to the facts of this case.

In sum, the trial court's findings of fact do not support a conclusion that defendant's waiver of rights was involuntary or that his

recorded statement should have been suppressed. Based on the evidence presented at the motion to suppress hearing, the trial judge should have ruled defendant's statement admissible. Accordingly, we reverse the trial judge's order suppressing defendant's recorded statement and remand this case for further proceedings.

Reversed and remanded.

Judges WYNN and HUNTER concur.