An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 15-234

Filed: 6 October 2015

Henderson County, Nos. 11 CRS 97, 50209

STATE OF NORTH CAROLINA

v.

ERIC CORNELL WILSON

Appeal by defendant from judgment entered 24 September 2014 by Judge C. Philip Ginn in Henderson County Superior Court. Heard in the Court of Appeals 25 August 2015.

> *Attorney General Roy Cooper, by Special Deputy Attorney General H. Dean Bowman, for the State.*

> *Sarah Holladay for defendant-appellant.*

TYSON, Judge.

Eric Cornell Wilson ("Defendant") appeals from judgment entered after a jury convicted him of first-degree murder. We find no error in Defendant's conviction or the judgment entered thereon.

I. Factual Background

A. The State's Evidence

On 12 January 2011, patrol units of the Hendersonville Police Department received a call to respond to 1119 Park Street in Hendersonville, North Carolina, to investigate a report of a female who was "tied up" inside the home. The dispatch to the units came from Monica Howard ("Ms. Howard"), the 911 supervisor for the Hendersonville Police Department. Ms. Howard received three calls from a man who identified himself as "TJ" and stated he had found the victim, Victoria Jon-Baptiste ("Victoria"), tied up in her home.

Officer Kenneth Hipps ("Officer Hipps") testified he and Officer Robby Upton ("Officer Upton") responded to the address. Detective Richard Olsen ("Detective Olsen") eventually joined the officers at the residence. Officer Hipps knocked on the door, but no one responded. Samantha Skeans ("Ms. Skeans"), Victoria's neighbor, approached the officers. Ms. Skeans said she had received a telephone call from a blocked number. The caller told her someone was tied up inside Victoria's house. Ms. Skeans told the officers the caller identified himself as "TJ," but she recognized the caller's voice as that of Eric Wilson, the defendant.

Officer Upton gained access into the house through an open window and unlocked the front door. As soon as Officer Upton opened the front door, a four- or five-year-old girl emerged from the hallway. Officer Hipps testified he asked the young girl where her mother was, and "she pointed to the bedroom and said she was tied up." Officer Hipps stated he entered the bedroom and found Victoria dead on the

bed. Her mouth had been gagged with a piece of cloth that was tied with a phone cord, her arms were tied behind her back, and her face was discolored and "purplish looking." A "small male child about two years old" was on the bed with her. The officers also encountered a third male child in the back bedroom.

Officer Hipps asked the female child, "Who did this to your mama?" and she replied, "My daddy." She told Officer Hipps her father's name was "Eric," and she identified a picture of Defendant in a picture frame as the person she had referred to as "Eric" and "daddy."

Defendant voluntarily appeared at the Hendersonville Police Department that same day to speak with Detective Olsen and Captain David Adams ("Captain Adams"). Defendant was not placed under arrest, handcuffed, or restrained in any manner. Detective Olsen informed Defendant he was free to leave at any time. Defendant told Detective Olsen he used to live with Victoria, but had not been in contact with her for several weeks, because she had a domestic violence protective order in place against him as of November 2010.

Defendant also told Detective Olsen he had received a phone call early that morning from a person who identified himself as "TJ." According to Defendant, "TJ" said he was inside Victoria's house the morning of the murder and found her bound, tied up, and gagged. Defendant told Detective Olsen he could not provide "TJ's" phone number because the call came from a blocked number. Defendant also stated

he did not know "TJ." Defendant said he called 911 to report the information "TJ" shared with him.

Defendant told Detective Olsen he stayed at the Western Carolina Rescue Mission in Asheville, North Carolina the night Victoria was killed. He woke up early the next morning and went to work at Labor Finders, in Asheville.

Defendant allowed Detective Olsen and Captain Adams to look through the cell phone he had with him. The detectives were unable to find the purported phone call from TJ. Detective Olsen noticed a phone call had been made from Defendant's phone to the Hendersonville Sheriff's Office "just before 5:00 o'clock in the morning." Detective Olsen testified: "And that was interesting to me, because it was in the call log just before 5:00 a.m. on the date this happened, yet a call subsequent to that wasn't in the phone. The call that he said he got from TJ was not in the call log." Shortly thereafter, Defendant stated he was going to the ground floor to smoke a cigarette. Defendant stated he was not going to leave, but did not return to the police department that day.

Detective Olsen and Captain Adams determined Defendant had not stayed at the Western Carolina Rescue Mission on the night of the murder, as he had claimed. The Henderson County Sheriff's Office obtained an arrest warrant for Defendant's violation of the domestic violence protective order, and Defendant was arrested on 14 January 2011.

Detective Olsen and Captain Adams interviewed Defendant a second time, after he was arrested and taken into custody. Detective Olsen testified Captain Adams explained Defendant's *Miranda* rights to him, both orally and in writing. Detective Olsen also testified Defendant waived his *Miranda* rights, both orally and in writing, and agreed to talk to the officers. This interview was video recorded.

Defendant told the detectives he had been dishonest with them during their initial conversation, and that he had contacted Victoria over the telephone, in violation of the domestic violence protective order. The detectives also learned the phone call Ms. Skeans, the victim's neighbor, received and the initial 911 phone call had been placed from the phone in the lobby of Defendant's employer.

The detectives continued to ask Defendant how he knew Victoria had been bound and gagged, if he had not been present in her residence. Defendant continued to deny he was present at Victoria's house, until he stated: "I am finished, and my attorney's name is Beth Stang."

Detective Olsen testified he stopped questioning Defendant at this time, although he did not believe Defendant had invoked his right to counsel. Detective Olsen testified he and Captain Adams "erred on the side of caution and stopped interviewing [Defendant] at that time." Detective Olsen also testified he told Defendant "if he did, in fact, have a lawyer that it would probably be in his best

interest to tell the lawyer the truth and not tell the lawyer the stories that he told us that we knew to be untrue."

As Detective Olsen and Captain Adams were exiting the interview room, Defendant made a hand gesture indicating he wanted the detectives to return. Detective Olsen testified, "We stopped. We inquired if [Defendant] wanted to continue talking to us without a lawyer present. He nodded in the affirmative. We asked him again and got a verbal response that, yes, he did wish to talk to us further without a lawyer being present." The detectives resumed the interview, and Defendant stated, "[i]t wasn't suppose [sic] to happen." Defendant admitted he had been at Victoria's house the night she was murdered.

Defendant told the detectives he and Victoria were in her living room, and Victoria "had a phone cord that she was playing around with." At one point she "wrapped it around [Defendant's] neck and pulled on it." Defendant did not like this, and he put the phone cord around Victoria's neck. Defendant and Victoria were back-to-back, and he leaned forward with his body, which put more pressure from the phone cord around Victoria's neck and caused her to die.

Captain Adams asked Defendant if he placed Victoria in her bed after she died. Defendant responded affirmatively. Captain Adams asked Defendant "if he was the one that tied [Victoria] up," and Defendant answered affirmatively once again.

On 19 January 2011, Defendant was indicted by a grand jury for the second-

degree kidnapping and first-degree murder of Victoria.  Defendant's case proceeded to trial before a jury on 22 September 2012 in Henderson County.  Defendant represented himself at trial.  Douglas T. Hall, Esq. was appointed as standby counsel for Defendant.

### B. Defendant's Pre-trial Motions

### 1. Motion to Bar the Admission into Evidence of Domestic Violence Protective Order

Victoria had secured a domestic violence protective order, which was in effect against Defendant at the time of her death.  Defendant filed a *pro se* pre-trial motion to bar the admission of this evidence.  The trial court deferred ruling on the admissibility of the protective order at that time.  At trial, the State did not initially seek to introduce the domestic violence protective order itself.  The State informed the trial court there would be a reference to the domestic violence protective order during its first witness's testimony.

Ms. Howard, the 911 dispatcher, played an audiotape recording of a 911 call, in which Defendant stated he could not enter Victoria's home due to a protective order that was in place.  The trial court found the reference to the protective order in the 911 call was admissible as a statement against interest, and did not constitute impermissible character evidence under Rule 404(b) of the North Carolina Rules of Evidence.  The trial court did not rule on the admissibility of the domestic violence

protective order itself at this time. Several other witnesses for the State also made reference to the existence of the protective order during their testimony.

An unrecorded bench conference was held at the close of Detective Olsen's testimony. The trial court allowed Victoria's protective order to be marked as State's Exhibit 36, admitted into evidence, and to be published to the jury.

### 2. Motion to Continue

Defendant's trial was scheduled to take place at the 22 September 2014 criminal session of Henderson County Superior Court, over three years and eight months after Defendant's indictment. On 10 September 2014, Defendant filed a *pro se* pre-trial motion to compel production and continue his trial to the 10 November 2014 session of court. Defendant provided the following reasons for seeking a continuance: (1) Larry Daniel ("Mr. Daniel"), Defendant's digital and phone records forensic expert, was unavailable for the 22 September session due to a prior commitment; (2) the copy of the videotaped interview with a child witness was defective, and Dr. Pete Sansbury ("Dr. Sansbury"), Defendant's child psychology expert, was unable to prepare for trial without a working copy of the video; (3) the State had not provided Dr. Sansbury with the curriculum vitae, training, and qualifications of Officer Dottie Parker ("Officer Parker"), the officer who had interviewed the child witness; and (4) Defendant could not effectively cross-examine

witnesses without a functioning copy of the videotaped interview and Officer Parker's training and qualifications.

When Defendant's case was called for trial on 22 September, Defendant offered additional support for his motion to continue. He explained to the court his pathology expert, Christina Roberts ("Dr. Roberts"), was unable to testify due to a prior commitment in Durham. He also stated he had taken over his case in May 2014, and the four months he was given to prepare for trial was insufficient "due to the complexity of this case[.]"

The State objected to Defendant's motion to continue on the following grounds: (1) Defendant had been provided with a copy of the forensic interview the previous week; (2) the State did not plan on calling Officer Parker as a testifying witness; and (3) the State did not plan on calling any expert in cell phone tower records as a testifying witness.

The trial court denied Defendant's motion to continue, based on the following oral findings of fact:

> [T]he Court finds as fact that the experts indicated in the motion, Larry Daniel [and Christina Roberts] . . . [n]either of those witnesses have been subpoenaed by the defendant. The Court further finds that the forensic interview of the child witness has been provided. . . .
>
> The Court has determined that – in addition to that, that Officer Dottie Parker, her curriculum vitae [h]as not been delivered to the defendant. But the State has

indicated in open court that she will not be called as a witness in this trial.

Based on that, the Court in its discretion determines that because of the age of this case, because of the number of times that it's been placed on the trial docket, because of the length of time that the defendant has had to prepare, that in its discretion it will deny the motion to continue and to compel production of the evidence and will order that the case proceed at this session of court.

### 3. Motion to Suppress Statements to Police

Defendant filed a *pro se* pre-trial motion to suppress the statements he had made during his second interview with Detective Olsen and Captain Adams after he stated, "I am finished, and my attorney's name is Beth Stang." Defendant alleged his subsequent inculpatory statements to the detectives were obtained in violation of, and after invocation of, his right to counsel.

Defendant's motion to suppress was not heard prior to trial. During his trial, Defendant objected to Detective Olsen's testimony regarding his second interview with Defendant and argued he invoked his right to counsel and the continued questioning violated his *Miranda* rights. The trial court conducted a *voir dire* of Detective Olsen, watched the videotaped recording of the interview, and heard arguments from both sides. The trial court orally denied Defendant's motion to suppress and stated, "the Court in its discretion is going to allow both the testimony of [Detective Olsen] and the videotape."

Defendant did not present any evidence at trial, nor did he testify on his own behalf. Defendant made a closing argument in which he admitted he killed Victoria, but argued the killing was not premeditated.

The trial court dismissed Defendant's second-degree kidnapping charge at the close of the State's evidence. The jury returned a verdict finding Defendant guilty of first-degree murder. The trial court sentenced Defendant to life imprisonment without the possibility of parole.

Defendant gave notice of appeal in open court.

## II. Issues

Defendant argues the trial court erred by: (1) admitting into evidence Victoria's domestic violence protective order against him; (2) denying his motion to continue; and, (3) denying his motion to suppress statements made to law enforcement after invoking his right to counsel.

## III. Analysis

### A. 404(b) Evidence

Defendant challenges the admission into evidence of the domestic violence protective order Victoria had taken out against him. Defendant asserts his prior bad act was neither relevant pursuant to N.C. Gen. Stat. § 8C-1, Rule 401, nor admissible under N.C. Gen. Stat. § 8C-1, Rule 404(b). Defendant also contends the domestic violence protective order, even if relevant and properly admitted, should have been

excluded because it was unduly prejudicial under N.C. Gen. Stat. § 8C-1, Rule 403.

We disagree.

### 1. Standard of Review

Our Supreme Court held:

> when analyzing rulings applying Rules 404(b) and 403, we
> conduct distinct inquiries with different standards of
> review. When the trial court has made findings of fact and
> conclusions of law to support its 404(b) ruling . . . we look
> to whether the evidence supports the findings and whether
> the findings support the conclusions. We review de novo
> the legal conclusion that the evidence is, or is not, within
> the coverage of Rule 404(b). We then review the trial
> court's Rule 403 determination for abuse of discretion.

*State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012).

"A trial court may be reversed for an abuse of discretion only upon a showing

that its ruling was so arbitrary that it could not have been the result of a reasoned

decision." *State v. Hayes*, 314 N.C. 460, 471, 334 S.E.2d 741, 747 (1985) (citation

omitted).

### 2. Analysis

"Evidence of other crimes, wrongs, or acts is not admissible to prove the

character of a person in order to show that he acted in conformity therewith." N.C.

Gen. Stat. § 8C-1, Rule 404(b) (2013). However, evidence of a defendant's prior

crimes, statements, actions and conduct is admissible, if relevant to any fact or issue

other than the defendant's character. *Beckelheimer*, 366 N.C. at 130-31, 726 S.E.2d at 159.

Rule 404(b) is a rule of inclusion, not exclusion. *Id.* at 130, 726 S.E.2d at 159. *See also State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990).

> The rule lists numerous purposes for which evidence of prior acts may be admitted, including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident. This list is not exclusive, and such evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime.

*Beckelheimer*, 366 N.C. at 130, 726 S.E.2d at 159 (internal citations and quotation marks omitted).

Our Supreme Court has ruled Rule 404(b) is "subject to but *one exception* requiring [the exclusion of evidence] if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *Coffey*, 326 N.C. at 279, 389 S.E.2d at 54 (emphasis in original).

Admission into evidence of other crimes, wrongs, or acts requires this Court to engage in a three-pronged analysis to determine its admissibility.

> This three-pronged analysis requires that we first determine whether the evidence was offered for a proper purpose under Rule 404(b), then determine whether the evidence is relevant under Rule 401, and finally determine whether the trial court abused its discretion in balancing the probative value of the evidence under Rule 403.

*State v. Adams*, 220 N.C. App. 319, 323, 727 S.E.2d 577, 580-81 (2012) (citation and internal quotation marks omitted).

The domestic violence protective order, issued two months prior to Victoria's death, contained allegations that Defendant punched her in the face and stomach, and choked her with his hands. At trial, the State argued the conduct described in the domestic violence protective order was admissible because it showed Defendant's malice, intent, and ill will toward Victoria.

Defendant argues "[i]f the [Domestic Violence] Order had any probative value, it was the fact of its existence. The contents of the [Domestic Violence] Order were wholly lacking in probative value." We disagree.

The State argued the specific nature of Defendant's conduct described in the domestic violence protective order was relevant to show the motive, opportunity, and intent in the case at bar. Defendant consistently asserted "it wasn't suppose[d] to happen" throughout the investigation and at trial. Testimony showed Victoria died as a result of ligature strangulation by Defendant. Evidence of Defendant's prior assault on Victoria, in which he strangled her with her hands, was relevant to refute his claim that her death resulted from an accident.

Evidence to show Defendant choked and abused Victoria two months earlier was clearly relevant to show his "motive," "intent," or "absence of mistake or accident." The domestic violence protective order was relevant under Rule 401, and

served a proper purpose under Rule 404(b). *See State v. Syriani*, 333 N.C. 350, 387-88, 428 S.E.2d 118, 138 (1993) (holding evidence that victim had obtained a domestic violence protective order against the defendant was properly admitted in a first-degree murder prosecution to show lack of accident, defendant's intent, malice, and premeditation).

The trial court's admission of the domestic violence protective order also did not violate Rule 403. "Evidence which is probative of the State's case necessarily will have a prejudicial effect upon the defendant; the question is one of degree." *Coffey*, 326 N.C. at 281, 389, S.E.2d at 56 (citation omitted). In considering the admission of the domestic violence protective order, the trial court excluded any evidence of criminal charges related to Defendant's acts of domestic violence.

Although no limiting instruction was given to the jury in their consideration of this evidence, other evidence was also presented by the State to support and return a jury's verdict finding Defendant to be guilty of first-degree murder. Nothing in the record or transcript suggests the jury relied on the contents of the domestic violence protective order for any improper purpose. Defendant has failed to carry his burden of showing he was unduly prejudiced under Rule 403 by the admission of this evidence. This argument is overruled.

## B. Defendant's Motion to Continue

Defendant argues the trial court abused its discretion by denying his motion to continue. Defendant based his motion in part on the unavailability of two of his expert witnesses, due to prior commitments, and in part on the fact that he had not been provided with the curriculum vitae of Officer Parker, a potential witness for the State. Defendant also argues the trial court's denial of his motion to dismiss deprived him of his constitutional right to due process. Defendant asserts his constitutional right to a fair trial was violated, because he was denied the right to be heard and present evidence on his own behalf. We disagree.

### 1. Standard of Review

A trial court may allow or deny a motion to continue in its sound discretion. Its decision will not be overturned absent a gross abuse of discretion. *State v. Jones*, 172 N.C. App. 308, 311-12, 616 S.E.2d 15, 18 (2005). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (citation omitted).

Where the trial court's denial of a motion to continue raises a constitutional issue, it "is fully reviewable [on appeal] by examination of the particular circumstances presented by the record on appeal of each case." *State v. Branch*, 306 N.C. 101, 104, 291 S.E.2d 653, 656 (1982) (citation omitted).

### 2. Analysis

"Even when the motion [to continue] raises a constitutional issue, denial of the motion is grounds for a new trial only upon a showing that the denial was erroneous and also that defendant was prejudiced as a result." *State v. Blakeney*, 352 N.C. 287, 301-02, 531 S.E.2d 799, 811 (2000) (citation and internal quotation marks omitted).

> The constitutional guarantees of due process, assistance of counsel and confrontation of witnesses unquestionably include the right of a defendant to have a reasonable time to investigate and prepare his case. No precise time limits are fixed, however, and what constitutes a reasonable length of time for the preparation of a defense must be determined upon the facts of each case.

*Branch*, 306 N.C. at 104-05, 291 S.E.2d at 656 (citations omitted).

"To establish [the denial of a motion to continue rises to] a constitutional violation, a defendant must show that he did not have ample time to . . . investigate, prepare, and present his defense." *State v. Williams*, 355 N.C. 501, 540, 565 S.E.2d 609, 632 (2002) (citation and quotation marks omitted). "To demonstrate that the time allowed was inadequate, the defendant must show how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion." *Id.* at 540-41, 565 S.E.2d at 632 (citations and quotation marks omitted).

> Consideration of a motion to continue . . . is heavily fact-based, and disposition of the motion is to be determined by weighing the complexity of the charges, including the number of incidents, the number of witnesses, the number of locations involved, and the severity of the punishment,

against the amount of time available for preparation of a
defense.

*State v. Worrell*, 190 N.C. App. 387, 392, 660 S.E.2d 183, 187 (2008) (citation omitted),

*disc. review denied*, 363 N.C. 589, 684 S.E.2d 160 (2009).

Defendant filed a motion to continue on 10 September 2014 because two of his

witnesses, Mr. Daniel and Dr. Roberts, were unavailable to testify at trial. At the

pre-trial hearing on his motion to continue, which took place the day Defendant's trial

was set to begin, Defendant argued he needed Mr. Daniel, an expert in digital

forensics, to testify about telephone records. The State announced it would not

introduce any expert testimony regarding phone records for Mr. Daniel to rebut.

Defendant admitted at the pre-trial hearing Dr. Roberts had not been

subpoenaed. Defendant did not offer a proffer of Dr. Roberts' testimony, nor did he

suggest before or during trial that the manner of Victoria's death was in dispute.

Defendant has failed to establish how Dr. Roberts' testimony would have enhanced

his defense.

Defendant also moved to continue because Dr. Sansbury did not have access to

the complete interview of the State's child witness, Victoria's four-year-old daughter,

until the week prior to trial. Defendant contended Dr. Sansbury was going to provide

an expert opinion regarding the daughter's testimony. The State did not call

Victoria's daughter as a witness at trial. Defendant argued Dr. Sansbury was going

to testify about the potential for inaccurate information from child witnesses due to

untrained interviewers. However, Officer Hipps, the officer who had interviewed Victoria's daughter, testified numerous times that he had no formal training in interviewing child witnesses.

Defendant also argued Dr. Sansbury did not have access to Officer Parker's curriculum vitae until the week prior to trial. Officer Parker had also interviewed Victoria's daughter. The State informed the trial court it did not intend to call Officer Parker as a witness.

The indictment and charges at bar had been pending for three years and eight months at the time of trial. After hearing from Defendant and the State, the trial court denied Defendant's motion to continue "because of the age of this case, because of the number of times that it's been placed on the trial docket, [and] because of the length of time that the defendant has had to prepare[.]"

Defendant has failed to show how the testimony of his three experts would have changed the outcome of his trial. Defendant has not carried his burden to show the denial of his motion to continue prejudiced his case or that he would have been better prepared had the continuance been granted. *See State v. Tunstall*, 334 N.C. 320, 329, 432 S.E.2d 331, 337 (1993) ("To demonstrate that the time allowed was inadequate, the defendant must show how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion."). Defendant's argument is overruled.

## C. Defendant's Motion to Suppress Statements Made to Officers

Defendant argues the trial court erred by denying his motion to suppress the statements he gave to Detective Olsen and Captain Adams. Defendant contends the detectives wrongfully continued to question him after he had invoked his right to counsel.

## 1. Standard of Review

The State argues Defendant did not properly preserve this issue for appellate review and asserts he failed to object to Detective Olsen's testimony at trial. The State also contends this issue is not properly before this Court because Defendant failed to "specifically and distinctly" allege in his brief that any error committed by the trial court amounted to plain error as required by the North Carolina Rules of Appellate Procedure, Rule 10(a)(4). N.C.R. App. P. 10(a)(4).

Our review of the transcript does not support the State's argument. Defendant objected at trial when Detective Olsen's testimony turned to his second interview with Defendant. The trial court inquired about the basis for Defendant's objection, to which Defendant replied: "I'm objecting to the interrogation, the second interrogation held on Friday January 14th. The basis is that the law enforcement [officers] who interrogated me violated [my] Miranda rights." Defendant properly preserved this issue for our review on appeal, and we accordingly apply the applicable standard of review.

> A trial court is to make an initial determination as to whether a defendant waived his/her right to counsel. Those findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting. Conclusions of law which are supported by findings of fact are binding on appeal. Further, the trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found.

*State v. Golphin*, 352 N.C. 364, 409, 533 S.E.2d 168, 201 (2000) (citations and internal quotation marks omitted), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001).

> This Court's review of a trial court's denial of a motion to suppress in a criminal proceeding is strictly limited to a determination of whether the court's findings are supported by competent evidence, even if the evidence is conflicting, and in turn, whether those findings support the court's conclusions of law. If so, the trial court's conclusions of law are binding on appeal.

*State v. Veazey*, 201 N.C. App. 398, 400, 689 S.E.2d 530, 532 (2009) (citations and internal quotation marks omitted), *disc. review denied*, 363 N.C. 811, 692 S.E.2d 876 (2010). We review the trial court's conclusions of law *de novo. State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (citation omitted).

## 2. Analysis

It is well-settled that "during a custodial interrogation, if the accused invokes his right to counsel, the interrogation must cease and cannot be resumed without an attorney being present unless the accused himself initiates further communication, exchanges, or conversations with the police." *Golphin*, 352 N.C. at 406, 533 S.E.2d at

199 (citations and internal quotation marks omitted). *See Edwards v. Arizona*, 451 U.S. 477, 485, 68 L. Ed. 2d 378, 386 (1981). "The question is whether the suspect articulated his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 450, 533 S.E.2d at 225 (citation and internal quotation marks omitted).

The Supreme Court of the United States has held "[i]f the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." *Davis v. United States*, 512 U.S. 452, 461-62, 129 L. Ed. 2d 362, 373 (1994).

Our Supreme Court held a defendant did not "unambiguously convey [his] desire to receive the assistance of counsel" and invoke his Fifth Amendment right to counsel when he stated to two police officers that his father wanted a lawyer to be present during the interrogation. *State v. Hyatt*, 355 N.C. 642, 657, 566 S.E.2d 61, 71 (2002), *cert. denied*, 537 U.S. 1133, 154 L. Ed. 2d 823 (2003).

This Court has also held a defendant's statement of: "I'm probably gonna [sic] have to have a lawyer," was not an unambiguous request for counsel. *State v. Dix*, 194 N.C. App. 151, 156-57, 669 S.E.2d 25, 28-29 (2008) (holding defendant's statement was ambiguous because "no reasonable officer under the circumstances would have understood defendant's words as an unambiguous actual request for an

attorney at that moment, as opposed to a mere comment about the likelihood that defendant would eventually require the services of an attorney in this matter"), *disc. review denied*, 363 N.C. 376, 679 S.E.2d 140 (2009).

Once a defendant invokes his right to counsel, he is not subject to further police interrogation until counsel is made available. *Edwards*, 451 U.S. at 484-85, 68 L. Ed. 2d at 386.  Officers may recommence interrogation without counsel present, only if the defendant (1) reinitiates the conversation; and (2) knowingly and intelligently waives his right to counsel. *Oregon v. Bradshaw*, 462 U.S. 1039, 1044-46, 77 L. Ed. 2d 405, 411-13 (1983); *State v. Tucker*, 331 N.C. 12, 35-36, 414 S.E.2d 548, 561 (1992).

Here, Defendant argues he unambiguously and unequivocally invoked his right to counsel during interrogation when he stated: "Right now I am finished, and my attorney's name is Beth Stang."  We disagree.

Defendant's statement was not a clear invocation of his right to counsel.  In *Davis*, the Supreme Court of the United States held the statement, "Maybe I should talk to a lawyer," was ambiguous and insufficient for a defendant to invoke his right to counsel. 512 U.S. at 461-62, 129 L. Ed. 2d at 373 (holding defendant's right to an attorney was not violated because a reasonable officer under the circumstances would not have understood his statement to be a request for an attorney). *See State v. Boggess*, 358 N.C. 676, 687, 600 S.E.2d 453, 460 (2004) (holding defendant's statement, "[i]f y'all going to treat me this way, then I probably would want a lawyer,"

did not constitute an unambiguous request for an attorney). Here, Defendant did not unambiguously and unequivocally invoke his right to counsel.

Defendant argues the detectives "manipulated" him into speaking with them after he invoked his right to counsel. "The admissibility of a confession must be decided by viewing the totality of the circumstances, one of which may be whether the means employed were calculated to procure an *untrue* confession." *State v. Jackson*, 308 N.C. 549, 574, 304 S.E.2d 134, 148 (1983) (citations omitted) (emphasis supplied). "False statements by officers concerning evidence, as contrasted with threats or promises, have been tolerated in confession cases generally, because such statements do not affect the reliability of the confession." *Id.* at 574, 304 S.E.2d at 148 (citations omitted).

Reviewing the totality of the circumstances and the video recording of Defendant's interview in the record, we find no support for this contention. Detective Olsen testified at trial he did not believe Defendant had affirmatively invoked his right to counsel. Detective Olsen stated, nevertheless, he and Captain Adams erred on the side of caution and ceased questioning at this time. When Detective Olsen stood up and opened the door, Defendant motioned for them to come back. Captain Adams asked Defendant if he wished to continue talking to the detectives without a lawyer present. Defendant nodded affirmatively, and gave a verbal response that he wanted to continue talking without a lawyer present.

Defendant's argument that his confession is inadmissible because his "will was overborne" is without merit. Defendant argues the detectives continued interrogating him after he stated, "I am finished," because Detective Olsen told Defendant it would be in his best interest to tell his lawyer the truth and Captain Adams said they had a videotape showing Defendant going into Victoria's house. The detectives made these comments as they were exiting the interrogation room. They did not seek to elicit a response from Defendant. Rather, it was Defendant who re-initiated contact with the detectives, after they ceased their interrogation. Defendant's subsequent confession was voluntary.

The trial court conducted a lengthy *voir dire* and determined: "After hearing the arguments of the State and [Defendant] and after having heard the testimony of [Detective Olsen] and viewed the videotape of the interrogation, the Court in its discretion is going to allow both the testimony of [Detective Olsen] and the videotape." The trial court properly determined Defendant's statement was voluntary and admissible at trial. Our independent review of the video recording in the record is consistent with the trial court's ruling. This argument is overruled.

### III. Conclusion

The domestic violence protective order in place against Defendant was properly admitted into evidence under Rules 401 and 404(b). It was not unfairly prejudicial to Defendant under Rule 403. *State v. Young*, __ N.C. __, 775 S.E.2d 291 (2015).

The trial court did not err by denying Defendant's motion to continue. Defendant failed to carry his burden of showing how the denial of the continuance prejudiced him.

Defendant did not unambiguously and unequivocally invoke his right to counsel during interrogation. Defendant's confession was voluntary.

Defendant received a fair trial free from prejudicial errors he preserved and argued. We find no error in Defendant's conviction or the judgment entered thereon.

NO ERROR.

Judges BRYANT and GEER concur.

Report per Rule 30(e).